AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No. 3:25-mj-70109 MAG |
| Joshua Jose Bernal, ) | |
| *Defendant(s)* | |

**FILED**
Jan 31 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  January 29, 2025  in the county of  San Francisco  in the Northern District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) & (b)(1)(C) | Possession with Intent to Distribute a Controlled Substance (to wit: methamphetamine) |
| | PENALTIES: Up to 20 years imprisonment, fine of up to $1 million, Supervised Release of 3 years up to life, $100 Special Assessment, and possible Forfeiture & Naturalization Consequences/Denial of Federal Benefits |

This criminal complaint is based on these facts:

See affidavit of FBI SA Hannah Broughton

☒ Continued on the attached sheet.

Approved as to form _____
AUSA Bhagat

/s/ Hannah Broughton
*Complainant's signature*

Hannah Broughton, FBI Special Agent
*Printed name and title*

Sworn to before me by telephone.

Date: 01/30/2025

*Judge's signature*

City and state: San Francisco, California

Hon. Peter H. Kang, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Hannah Broughton, a Special Agent with the Federal Bureau of Investigation (FBI), having been duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application for a criminal complaint charging Joshua Jose BERNAL (hereafter "BERNAL") with distribution of a controlled substance, to wit: methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint.

4. I am a Special Agent with the FBI, and an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

5. During my training at the FBI Academy, Quantico, Virginia, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches,

1

the drafting of search warrant affidavits, arrest warrant affidavits, criminal complaints, and probable cause. The academy covered all aspects of federal led investigations, including but not limited to drug investigations, including identification of controlled substances, physical and electronic surveillance, utilization of confidential sources, interview techniques, undercover operations, physical surveillance, constitutional rights, the execution of search warrants, and working with confidential sources.

6. Based on my training and experience, as well as conversations I have had with other experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking. These methods include the use of automobiles, wireless communications devices (such as cellular phones), lookouts and counter surveillance, false or fictitious identities, coded language, and/or encrypted communications. I know that many drug traffickers use cell phones to facilitate their drug dealing activities, including to arrange the collection, transportation, and distribution of narcotics. I also know that many drug traffickers will meet in person at pre-arranged locations to conduct meetings and transactions in furtherance of their drug trafficking activities. Many drug dealers utilize such practices to commit crimes while avoiding detection by law enforcement.

7. I have also witnessed and had discussions with other law enforcement officers about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.

8. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this affidavit.

**APPLICABLE STATUTE**

9. Under Title 21, United States Code, Section 841(a)(1), it is unlawful for any person to knowingly distribute or possess with intent to distribute a controlled substance. Under 21 C.F.R. § 1308.12, methamphetamine and fentanyl are Schedule II controlled substances.

10. At approximately 9:06 p.m. on January 29, 2025, a law enforcement officer operating in an undercover capacity (the "UC") purchased narcotics from BERNAL. Specifically, the UC stood in the vicinity of Larkin Street and Ellis Street in San Francisco, California. The UC made eye contact with BERNAL, and the UC nodded his/her head. BERNAL asked what the UC was looking for, and the UC responded, "crystal." BERNAL asked "how much?" and the UC responded, "forty."

11. BERNAL counted out baggies containing a white crystalline substance and handed them to the UC. In exchange for the baggies, UC provided BERNAL two previously-marked $20.00 bills. The UC's encounter with BERNAL was audio and video recorded.

12.     The baggies, which had a total gross weight of 3.2 grams, contained a white crystalline substance. The white crystalline substance was later tested using a TruNarc device and tested positive for the properties of methamphetamine, as depicted below:



13.     BERNAL was subsequently arrested and searched incident to arrest. In BERNAL's pockets, law enforcement officers located $115.52 in United States currency, to include the two previously-marked $20 bills that the UC had handed him.

14.     Following his arrest, BERNAL was transported to 450 Golden Gate Avenue in San Francisco for booking; following a full body search, agents located on BERNAL's person approximately 1.6 grams of a substance that later field-tested positive for the properties of fentanyl and approximately 8.3 grams of a white crystalline substance that later field-tested positive for the properties of methamphetamine. Both the fentanyl and the methamphetamine were packaged in individual baggies.

15. Additionally, law enforcement officers found on BERNAL's person items that I recognize as drug paraphernalia such as tin foil, and an orange plastic tube, that based on my training and experience, I know could be used to ingest or smoke methamphetamine. Additionally, they located small plastic baggies, which I know are often used for the distribution of controlled substances.

16. Based on my training and experience, I know the amount of methamphetamine that BERNAL had on his person at the time of his arrest on January 29, 2025, as well as the way it was packaged, was consistent with an amount possessed for distribution as opposed to mere personal use.

17. For the foregoing reasons, there is probable cause to believe that JONES has violated Title 21, United States Code, Section 841(a)(1) and (a)(1)(C), Distribution of a Controlled Substance (to wit: methamphetamine), and I respectfully request that a Criminal Complaint issue.

/s/ Hannah Broughton

_____
Hannah Broughton
Special Agent
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to
Fed. R. Crim. P. 4.1 and 4(d) on this 30th day of January, 2025.

_____
THE HONORABLE PETER H. KANG
United States Magistrate Judge

5